CURTIS & YALE COMPANY, Respondent, vs. WUNDERLICH, Appellant.

*September 23—October 19, 1920.*

*Guaranty: Construction: Past or future transactions.*

1. A guaranty by the president of a lumber company, running to a manufacturer of building materials and woodwork, of the lumber company's account, both book and notes, made in June, 1915, is *held,* under the course of dealing between the manufacturer and the lumber company, to have covered only transactions occurring up to November 20, 1915, when the account was closed and settled, and not to render the guarantor president liable for indebtedness of the lumber company to the plaintiff incurred in 1916 and 1917.

2. A guaranty will be construed to be prospective rather than retrospective unless it clearly appears that the parties intended it to cover past transactions.

APPEAL from a judgment of the circuit court for Langlade county: EDGAR V. WERNER, Circuit Judge. *Reversed.*

Action to recover on an alleged guaranty. Judgment for the plaintiff, and defendant appealed.

For the appellant there was a brief by *Avery & Plantz* of Antigo, and oral argument by *Charles H. Avery.*

For the respondent there was a brief by *Bird, Okoneski & Puchner* of Wausau, and oral argument by *R. A. Puchner.*

OWEN, J.    Plaintiff is engaged in the manufacture and sale of building materials and wood-work at Wausau, Wisconsin. During the years 1914 and 1917, inclusive, it sold a considerable quantity of its product to the C. H. Krause Lumber Company, at Antigo, upon account. The defendant, *George H. Wunderlich,* during such time was the president and principal stockholder of the lumber company, although he took little part in the management of its affairs. April 6, 1915, the plaintiff wrote to the Krause Lumber Company as follows:

"A year or so ago we handled some of your paper with

the indorsement of *Mr. George H. Wunderlich,* this pre-
caution being taken simply as a matter of good business.
With all conditions as they are at present, we now feel that
it would be quite proper for you to give us the personal
guaranty of *Mr. Wunderlich* covering such notes and open
accounts as you will be having for the next few months,
limiting the total amount if you feel that this would be
necessary and proper."

An exchange of correspondence resulted from this sug-
gestion which culminated in the following letter written by
the defendant to the plaintiff under date of June 15, 1915,
upon which plaintiff bases its cause of action:

*"Curtis & Yale Co.,* Wausau, Wis.
    "Gentlemen: Regarding the C. H. Krause Lumber Com-
pany account, I personally guarantee their account, both
book and notes, to you.
                "Yours very truly,   GEO. H. WUNDERLICH."

It appears that the course of dealing between the plaintiff
and the lumber company was confined to the spring, summer,
and fall months, and that the account was practically inactive
during the winter months, for the reason that very little
building was going on during the winter season.   For in-
stance, there was no charge made by the plaintiff against the
lumber company between November 20, 1915, and March
20, 1916, and this was usual throughout the years of their
business relations.

On December 23, 1915, plaintiff's book account against
the lumber company was balanced and settled by the lumber
company giving two notes aggregating $700, and the first
charge thereafter made by plaintiff against the lumber com-
pany was March 20, 1916.   Plaintiff continued to furnish its
product to the lumber company during the seasons of build-
ing activity up to the month of December, 1917.   December
18, 1917, the lumber company was adjudicated bankrupt.
Plaintiff filed its claim in the bankruptcy court, dividends
were paid thereon, and this action was brought to recover the
balance unpaid after crediting such dividends.   It is not

contended that any part of the $700 notes given to balance the account of December 23, 1915, is included in the account.

The trial court construed the letter of June 15th, above set forth, as an unlimited guaranty as to either time or amount and held the defendant liable thereon for all merchandise furnished the lumber company down to the time of its bankruptcy. Appellant contends that this was an erroneous construction of the liability assumed by *Mr. Wunderlich,* and the ruling of the court in such respect is the sole question presented on this appeal.

We have in mind the principle that "guarantees will be construed to be prospective rather than retrospective, unless it clearly appears that the parties intended that they should cover past transactions." *First State Bank v. Boetcher,* 154 Wis. 444, 447, 143 N. W. 172. The plaintiff invokes this rule of construction and contends that, applying it to the letter of June 15, 1915, the ruling of the trial court must be sustained. We think otherwise. The plain language of the guaranty, so called, strongly suggests the existence of a then present account, which *Mr. Wunderlich* assumed to guarantee, and rather excludes the idea that he intended to guarantee future accounts. The language "regarding the C. H. Krause Lumber Company account" suggests a then existing indebtedness, as does the further language, "I personally guarantee their account, both book and notes, to you." The view most favorable to the plaintiff that can be taken of this language is that it is ambiguous and that the intention of *Mr. Wunderlich* with reference to guaranteeing future accounts is doubtful. This situation justifies a reference to the entire correspondence between the parties leading up to the writing of the letter of June 15th. When we refer to that, we see that in its initial communication the plaintiff suggested that it be furnished with the personal guaranty of *Mr. Wunderlich* covering such notes and open account "as you will be having for the next few months." Considering the course of business between the parties, it is plain that the term "the next few months" had reference to the season of

1915, which, as we have seen, so far as business transactions between the plaintiff and the lumber company were concerned, ended November 20th.  Owing to the cessation of building operations the lumber company had no use for the product of the plaintiff during the winter months, and there was a lapse of the account from November 20th to March 20th, during which time a balance was struck and the account was settled.  We think it clear that the intention of the plaintiff in asking and that of the defendant in executing the guaranty was that it should cover only such transactions as occurred during the months of 1915, from which it follows that the defendant is not liable for indebtedness arising subsequent thereto.  The complaint of the plaintiff should therefore be dismissed.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the plaintiff's complaint.